Good morning. May it please the Court. I'm Irene Lee. I'll be presenting the argument on behalf of Appellant Absolute Software in place of my partner, Mark Fenster, who could not be here today, regrettably, because of a family emergency. My argument today before this Court has three parts based on three groups of patents. First, with respect to the 914 patent, the District Court erred in granting summary judgment because there is a tribal issue of fact as to whether stealth product meets the limitation of contacting the host monitoring system without signaling the visual or audible user interface. Is this a temporal question? I mean, is it a question of when the signal goes off, right? I think that's the issue that the stealth is raising, but we did not see that as a temporal question. We believe this to be a simple question of fact, whether the communication that occurs from the client computer to the host, whether that is done without triggering any visual or audible signal. And we presented sufficient evidence demonstrating that, in fact, the stealth product does get in touch with by initiating communication with the host monitoring system and does, in fact, communicate with the host monitoring system by transmitting data. And here, the data is the data that the host monitoring system can use to verify whether the client computer has been reported lost or stolen. And also, this is the data that the host monitoring system can use to track and locate and recover in a case the computer has been reported lost or stolen. Under the claim construction that was adopted, does it have to do both? No, Your Honor. Actually, in fact, you only have to do one of the two. Contacting has been construed as getting in touch with or communicating with the host monitoring system. So as long as you do one of the two, you meet the limitation of contacting host monitoring system. And in fact, that is an excellent point, and that thank you for asking the question, because we actually presented sufficient evidence that the stealth product performs both getting in touch with and communicating with. And you're absolutely right, Your Honor, that the claim construction does not require both. And here, we have a sufficient evidence that all the process done without triggering a single signal. I understand that there's an issue as to this ding sound. And what happened was, after acknowledging that their product, in fact, infringes upon the 914 patent, stealth added this ding sound as an attempt to design around. As a rather poor attempt to design around, they added this feature. But this feature makes the ding sound only after all the transmission takes place. It only happens after the transmission, all the data is transmitted to the host monitoring system. What are we supposed to do with the special master's reasoning that was essentially referred to by the district court in the summary judgment of non-infringement? Even though he says either or, the rationale would seem to say that his point was to actually say that you need to do both. I think we have to send it to the jury. I think that is an issue of fact. That is not an issue of law that should have been summarily dismissed by the district court. That's exactly the factual issue for jury to determine what do we do with getting in touch with and communicating with. That's the construction that's adopted by the district court. And determining whether this particular product meets that limitation is an infringement question. That is a question of fact for the jury to decide. And here, the stealth product meets that limitation. Why wasn't this language analyzed as a means plus function? Language. That, I recognize that that is an issue, but that was not an issue that was briefed or discussed or raised at any point in time before the district court. So, unfortunately, I do not have an answer for you, Your Honor. Just one point. So, there is a trouble issue of fact that precluded the district court from granting the summary judgment motion. I asked this court to reverse that judgment. Similarly, with respect to the 863 and 75A patent, there was a trouble issue of fact as to whether the stealth product meets the limitation of providing one or more of the global network communication links. And here, the word providing has been construed as the agent furnishing, supplying, or making available. And there, before the district court, there was a sufficient evidence that it's, in fact, the stealth agent, stealth product, that sends a message packet to the host monitoring system. And the district court recognized that. District court... So, where did we go astray here? That's what's unclear. I mean, you're challenging the claim construction, but let's assume that we agree with the district court of the special master's claim construction of global communication. Yes, Your Honor. Assuming that district court adopted the proper claim construction, what went wrong here is the district court properly recognized that there's a message packet provided by the agent. The message packet has two IP addresses, and the two IP addresses represent the IP address of the client and the IP address of the host. And the district court properly recognized that it's the agent that provided the IP address of the client, the source. But the district court refused to recognize that it's the agent also providing the second IP address. But neither expert... This is what I couldn't understand. Neither expert could say definitively where that host address came from in the message packet. Why is that? To be honest with you, I don't know why the expert didn't just come out and set it. I know that our experts stated that every packet, message packet, has a two-header, one IP address from the source, and the IP address of the destination. I really don't know why that didn't come out and say... I think it's just... Isn't it your burden? I mean, this is your alleging infringement. Yes, Your Honor. But here, as a non-moving party, we came forward with sufficient evidence to prove that it's the message packet that was sent by the agent containing two IP addresses. And we believe that that's a question of fact for the jury to decide whether that meets the limitation of providing. And here, we asked the court to recognize that there is a trial blister of fact. And here, the district court err in placing additional obligation upon the non-moving party to come forward with concrete evidence that is not some other component of the computer that somehow put the second IP address. That is not the right standard for summary judgment. Let me see if I understand. Are you saying that the district court was wrong because he said how the information gets on the data packet is something that's relevant to the claim construction and you haven't shown that there? Was that the sort of additional element he required in the non-infringement analysis? In the non-infringement analysis, the error that district court made is failing to make the logical inference based upon the undisputed fact that there's a message packet prepared and sent by the stealth agent containing two IP addresses. And stealth, in fact, admitted that the IP address of the client is provided by the stealth agent. The only issue is as to whether the second IP address, which is containing the same message packet, which admittedly provided by the agent, is also provided by the agent. And this is a question for the jury to determine. It's not something that the district court should have summarily dismissed. And we asked the court to reverse that decision as well. If I may just touch upon the claim construction issue that was raised before as to the term global communication links. I just want to point out that the special master here did a really, really amazing job in constructing like 30 plus terms. But as to this one particular claim term, he somehow, he literally said, I put a different hand. As a person of the art, looking outside of the patent, he actually stated that during the claim construction hearing, looking outside of the 75A patent, I think the link means connection. But what the mistake he made here is he, instead of looking at the specification to determine the meaning of the claim construction, he stepped outside and inserted his personal view and had this preconceived understanding as to what link means. And then he looked at the specification to see whether there is any contradiction. You had 20 days to object to that. And your original, your opening objections say he got everything right except a couple things. And this wasn't raised. Actually, I know you raised it in your response to their objections. Yes, Your Honor. But why is that good enough? That's past the 20 days. That is unfortunately the case that's absolutely true. We did not raise that objection within the 21 day time period. We raised it in response to their objection. And that was a mistake on our part. But it doesn't mean that we did not preserve this objection before this court. It's a claim construction issue. This court has a plenary power to review this de novo. And the cases that stealth size to raise this on point, they're factually distinguishable. And we briefed that issue before this court, specifically the Schaefer deals with the issue of interpreting the settlement agreement. And that objection was never raised before the district court. Again, in Sage, there is more distinguishable in a sense that Sage, the party raised the objection, raised a novel infringement claim for the very first time before this court. So, that issue was never raised before the district court either. Here, the facts are completely different. We briefed this issue in all our briefing. We maintain our position throughout the claim construction hearing. And we did raise the objection even though it was belated. And I asked this court to adopt the proper claim construction. I understand I have three minutes left. Thank you. Thank you, Ms. Lee. We'll restore Ms. Lee's entire rebuttal time. So, would you give Mr. Doyle an additional five minutes if he wants to use it? That'll keep the time about even. Thank you, Your Honor. Doyle, you may proceed. May it please the court, Jeremy Doyle for the respondents across appellant stealth. I'll respond briefly to the arguments made on appellant's motion and then move into our cross appeal if that suits the court. First on the 914 patent, the issue of contacting. I do think it's a temporal issue and it's one that the district court and the special master wrestled with. If contacting near the end of the transmission doesn't work, what is the requirement? Does it have to be at the beginning? Does it have to be in the middle? Does it have to be through the whole time? And that's unworkable. And with respect to... You didn't appeal that claim correct? Correct. All right. So, what about the fact that it says or? It doesn't say and. If you look at the special master's reasoning, it goes to a definition and the definition he goes to, and this is in the record at A040043-45, where he says, what's the definition of contact? It's get in touch with, semicolon, communicate with, synonymous, not either or. That's the construction that he came up with. Understood. And that's not the construction the district court adopted. If you believed that he meant and, why didn't you object to it or appeal it? I think he meant them synonymous as not different things. In other words, I don't view them as two different steps. But even if you do, I think the reality is, it is a true statement that it makes it at the end of getting in touch with or communicating with, but it is only when it fails. It is only when there's no internet, so it doesn't get out or it can't get to the host, no sound is made. But could a reasonable jury find contrary to your argument? I don't think so, because there's no dispute about how the product works and the claim has been construed. And so, the fact that the ding happens at the end and before the transmission is cut, as the court found, I think there is no evidence. But why couldn't a jury read this and say, well, it got in touch with it long before there was a ding satisfying that particular claim construction without the ding? Well, as the judge found, I think that would not be a reasonable finding by the jury based on this claim construction and how it works. I think it was the judge's conclusion and I think was the correct one, because of the fact that it is only when that communication fails that no sound is made. And every time there is contact, whether it's getting in touch with, actually transmitting, whatever happens in that contact, whether they just get in touch with and nothing more happens, or there's communication or there's transmission, if there's a contact, there's going to be a ding at the end before that. Why didn't you ask the special master to do this as a means plus function analysis, given the wording of the claim? Your Honor, I apologize. I'm in an even worse position than Ms. Lee to answer that. We weren't counsel at the time for stealth when the claim construction was going on. And so, as to why strategy things were done or not done, I can't speak to. Wouldn't it be a lot easier for you if you would argue that he defined a function? One would think. One would think. But so, we have to work with the claim structure, we have to work within the record that we do, and we think that the judge was right as to the evidence in this case. And then the same on the 863 and the 758, whether the agent provides, as the court pointed out, their expert stopped short, does not say the stealth agent provides, doesn't even parrot the language of the claim. He stopped short and the agent provides the source IP address, and he says the packet has the other when it gets there. Your agent, your expert stopped short too, right? He says, our expert says the agent only provides the source IP address. But can't say definitively that it doesn't provide the host? No, what he says is, I think in his testimony is, well at least, or maybe it was just in our affidavit, it's clear the only thing, so it excludes the other, the only thing the product provides is the source IP address. But your expert who's saying I don't know when and how it gets there, he's the president of stealth, right? Correct, and I can't remember whether that was his testimony or it was just argument in the, in the, so I don't want to ascribe a lack of knowledge to him if he, if he knows. But I think he doesn't exactly know, but he does know in his affidavit reflects that his product, stealth product, does not do it, does not provide it, and neither does, and their expert doesn't say it. And so I view it kind of like a, you know, a burden of production comes first, even before, have you met your burden of proof? And you got to have somebody in here to say that this element is satisfied, that the agent provides it. Nobody does. There is not any evidence of that that arises to us until that evidence even satisfies burden of production. So I think the court was right on that. And then on the claim construction on that. What about the argument that the mere fact that it's in the message packet at the end, at the end game, that that should be enough to raise a triable issue of fact for a jury? I don't think it is if you literally have nobody saying the agent provides it because that's the requirement. It'd be like saying two events happen and therefore that's evidence of reliance. You need to have somebody in there saying I relied. And then you can judge reasonableness of it. You can judge material. And same thing here. You can't draw inferences from just speculation, which is what this would be. So race hipster is not enough? No, not here. Not here. Not on a critical element of a claim. And then on the claim construction, the only thing on that I'll add is I think the special master, as we laid out in our brief, very carefully went through the specifications, looked at the specifications for how communication links was used in coming up with his interpretation, didn't step outside. And not only was there no objection, there was no objection to him using dictionary definitions to supplement his understanding, to supplement the specification. So I think his interpretation of the claim term global network communication link was not erroneous. Let me shift to our appeal and we've got three issues, as you know, on appeal. Where in the record, by the way, does Stealth's experts say that he only provides the IP address of the device? His declaration is at 809-0011. 809. What is it again? 809. 809-0011. And does it say at that point he's only giving an IP address? It's at 0010, paragraph eight of his declaration. Stealth does not use and has never used a method that involves the agent providing the identification of one or more, perhaps less than all of the connections, either direct or indirect between two nodes of the internet. Instead, the Stealth agent provides the IP address of the device and an IP address is not a link or a connection, it is intended a node. Okay, so the word only is not in there, but what he says there is we don't provide two nodes. Instead, the Stealth agent provides the IP address of the source node. Don't you need the only? I don't think so, because it's not our burden for one thing, but the, I think the import of that paragraph, the way he says we do not provide two nodes. Instead, we provide the node of the IP address. Can you, can you give me that page again? You said 0010. I'm sorry, 09-0010. Okay, which paragraph? Paragraph eight. So I don't think the, I don't think that only needs to be inserted there, because I think by saying that at no time does my agent, has it been designed or does it provide both, instead it provides the source, says the same thing as if the only sentence there was, it only provides the source. I view those to be the same and in any event, I think this is, since this is an issue of their burden of proof, it's the absence of proof that the district court found. There was no evidence of non-infringement, didn't have to carry the burden of conclusive evidence. And all that's doing is concluding that stealth doesn't infringe, it doesn't say it only provides the IP address. That strikes me as somewhat significant. On a, on a no evidence point, I don't think so, with their, with their burden. Also doesn't say it, that it does not provide the IP address of the host site. Well, it says it does not provide two nodes, instead it provides one node, which is the source. So I, I see what you're saying. I read the paragraph to say the, the same thing as I've been saying it, as though it only had one sentence, it only provides, instead to say we don't provide two, we provide one. There's a bit of ambiguity there though, isn't there? I, I, I see what you're saying. I don't think it changes the outcome at the district court level on a no evidence basis, which was his, his basis for summary judgment. I see your point there. I, I read the paragraph same way. I see where you are. On our appeal, the construction of semi-random in the 269 patent, then assuming that construction, the court's grant of a motion of summary judgment of non-infringement of claims 12 and 25. You're saying it should, we should view it as somewhat random? I'm not sure I understand what that means. That's kind of like being somewhat pregnant. I mean, it's random or it's not random, right? It, yes, it should be somewhat because that's the ordinary definition of semi, and so as a modifier of random, what does semi-random mean? Our view is the patent doesn't define it. Specification doesn't define it. It doesn't tell you. There's no special definition in there. There's no indication that the patentee has applied a special meaning to it, so we go to ordinary meaning, and semi is partially or somewhat, and so somewhat random. Somewhat random is, is a contradiction in terms, so, so it's got to have a special definition in order to, to be semi-random. There has to be a special definition, and the, and the patent uses it a number of times and only uses it in the context of a time interval, isn't that right? Well, I, I think somewhat random, I take it to mean, as we argued that the absolute product does, that is, it's unpredictable. If you were today trying to map out over the next year, it'd be all over the place. You couldn't come close to predicting what random is. I think that's what somewhat random is, but I, I, I take your point on that, but I, I, on your second question, the patent only uses semi-random, uh, one time at the beginning when it says, uh, well, in the beginning of the summary of the invention, it says the call initiation is semi-random rate, perhaps once a week, and throughout the rest of the specification, it does not use the term semi-random, and so the, kind of the two issues we have with the construction... Doesn't claim 27 use semi-random? I know it's not one of the claims that's... There is, I take it back, there are a number of claims that use it, I meant in the specification. Okay. It's not elsewhere. There are a number of claims that use, that include the term semi-random, but to us, what the special master in the district court did was, in interpreting a term that itself is not defined, that is not consistently and repeatedly used in the specification to have a special meaning and whatnot, he looked to a feature that's described in the specification, one call per time period, that is specifically described as a preference, in the sentence I just read, and as an option that may or may not be added, and it's described as an option near the end of the specification, in column six of the patent, lines 30 through 68 or so, and so the question is, if you got a term and it's not defined, and there's no special meaning given that you can tell from the use of in the specification, because it's not used very often, you look to a feature that itself is described as optional and preference, and is described as serving a function that the semi-random, that's not tied to the semi-random element, that is, the semi-random is in the performance monitoring claims, independent claims, it is not in the independent claims of misuse detection, but he looks at the and he says, okay, well, without a definition, I'm going to take this feature, it's optional and for a different purpose, and I'm going to interpret the term to require that feature. But the alternative is that it's, it's undefined, undefinable, right? You're not pointing to what other, what else we look at at the spec to define it, you're just saying, we shouldn't have this definition, in other words, it should mean everything and nothing. Well, I think it's, it gets back to maybe we're having about, can you be semi-random, can you be semi-pregnant and whatnot, and I think, whereas with pregnant, I don't think you can be semi-pregnant, I think semi-random can be understood to mean, maybe not entirely random, but having lots of characteristics of being random. It's unpredictable. You don't know when it's going to happen. If you looked at it over time, it would vary. But what in the spec then in answer to Judge Prost's question, what in the spec then would explain to us what having characteristics of randomness means? There is not much in the spec, and so, which is why our proposal was and is . . . Well, your column six does say the remote site will place exactly one call per time period, a day, week, or month. Right, and let me walk through that, because I think it's an important point. It's important to our argument, and that is, the beginning of that up at line 30 talks about, look, with any kind of protection device like the one in this invention, you're always going to, there's going to be people trying to work around it. Here are five, some features that can be included in the present invention to make this more difficult, and then it lists five features, one of which, feature number two, says schedule the transmissions to occur randomly. The monitored apparatus shouldn't phone home every Monday at 8 a.m. That at least somewhat informs maybe what he meant by random, and that is not at a definite time every same day, same time. Hit the four. Four then says what you said, that the call, the one call per period feature, which is what he read into the semi-random element, goes down on the bottom, so these are features that can be added, and then at the bottom of that, after the lists the five, he says there are some figures that illustrate some of these features. These can be individually or in any combination to include as many or as few of the features of a particular invention, and so to me, this section is actually the patentee making clear that this one call per period feature is an option, along with these other four options that are here for things you can add to make this harder to work around, but not things you have to add, and so this is a key point. There's no random reference whatsoever, and it would still be semi-random. You reference here day, call per day, call per time period. It references a particular time on a particular date. If none of those features existed, you're saying it could still be random. As long as it wasn't, yes, as long as it was somewhat unpredictable and had characteristics of randomness, like I said, if you look at it over time, the way the absolute product works, it's going to look random. Technically, is it random? Maybe not, but it's going to look random. It's going to have characteristics. It's going to be unpredictable, which I think is the most important one, so I think that would work to distinguish it from, as I say here, same time, same day, every day, and so the issue we have is right here. As I think of it, when you look at a specification, the question is in semi-random, did the inventor expressly disavow something or limit it to this one call per time, per period feature, and to me, when the invention lays out right here, that exact feature is an option. Well, but see, semi-random is not in all claims, as you pointed out earlier, so the district court could properly construe semi-random to accord with the time periods for the claims that have that semi-random provision and allow the other options to work in the claims without the semi-random, right? Sure, but what he in fact did was said that the description of this one call per time period feature in the specifications limits the invention to that, limits it to that, and so he found that to be… Limits the semi-random claims to that. Well, he found it limits the invention, and then he limited it by importing it into the semi-random definition, and to me, and the other thing he did was said the purpose of this one call per period is fraud detection, misuse detection. Well, the semi-random element appears mostly in the performance monitoring claims. Now, it gets added dependently in some function, but it is not in the independent claims that are about misuse detection. You're into your rebuttal time. I'll reserve the rest. You'll save the rest? Thank you. Thank you, Your Honor. Ms. Lee, you have your full time, eight minutes. Thank you, Your Honor. May it please the court. As to the temporal issue that the what Estelle seems to argue is that as long as there's a connection, I pick up the phone and calls the host monitoring system. You send all the information that you need to send to the host monitoring system, but somehow you keep the phone line open and make a ding sound right before you hang up. That's what they're claiming to have done as a design around, and that is not what meeting the limitation of contact. But his more important argument there is getting in touch and communicating is the same thing, and they were, the claim construction was just kind of repeating the same context the way we often do in speech. I recognize that that is Estelle's position. We disagree with that position, and I think that is something for the jury to decide, Your Honor. Well, no, no, juries don't decide the meaning of claims, and so we are going to decide if the district court meant that getting in touch and communicating to be one concept or two. I see. Why wouldn't it just be one concept? I recognize your question. I could say I'm speaking or I'm talking to you, but I obviously mean the same thing. But the claim construction says is getting in touch with or communicating with. Why aren't those the same thing? I don't know, but that is what the district court adopted as the claim construction for contacting, and there nobody raised the issue as to the properness of that claim construction, and if, but here in terms of analyzing the infringement, it really doesn't make a difference because there is sufficient evidence that the stealth product does both getting in touch with and communicating with. With that, on the 758 and 863 issue, there is a trial issue of fact as to whether or not the stealth product provides the second IP address, which is contained in the message packet, and as the stealth council accurately pointed out, there is a declaration from stealth president, who's also working as their expert, who did state that it's the stealth agent that provides the first IP address, but there is no statement that stealth product does not provide the second IP address, and the stealth council argues that there was no evidence, but there is sufficient evidence presented by our expert stating that the message packet. How do you read his statement he gave to us that paragraph eight on 090010? It said we don't get in touch with both nodes, we just use one. He doesn't say only, but I think that's critical that there is no word only. I think the word only were there. We would not be raising this issue before this court, and also we provided. How can it, but he said we don't get in touch with both, we just supply one address, so how does that create a tribal issue? Because that becomes an issue as to whether or not it's the stealth product that provides the second IP address. There is no evidence refuting that fact. In fact, and we presented evidence supporting that the second IP address also is provided by the stealth agent. That's why there is a tribal issue of fact, your honor. On 269, I want to touch upon the claim construction issue that I think the issue here is the term semi-random is the term that does not have a common ordinary meaning. So, the special master accurately acknowledged that this we have to look at the specification to determine what the patentee. You heard our discussion on column six of the 269 and you heard Mr. Doyle tell us well these are all supposed to be optional ways of fraud prevention. I think that is a rather clever argument if all the claims in the 269 patent include this term semi-random rate. As a chief judge Rader accurately pointed out, the semi-random rate appears only in some of the claims. There are many claims that do not require the semi-random rate and that is a way of reflecting that there are many different ways to practice this invention. These can be added individually or in any combination include as many or few of the features that seems to be pretty optional language. But in fact the optional appears once in the entire 269 patent and that appears on line 63 of column six and there the optional is used to describe the figures five, six, and seven and the term optional refers to the claim figure five illustrates the modification of figure two and here figure two illustrates the present invention where the present invention was described as making one random call in a predetermined time interval and the optional again the figure six and figure seven they are just different ways to bolster this making one random call in a predetermined time interval. In fact, making one random call per given time interval is not an option but it is a limitation specifically used in the claim language and when you look at the claim language you recognize that this is a limitation and determining the meaning of the limitation is not the same as importing a limitation from the prefer embodiment. That is a distinction that stealth fails to recognize and going back to the optional, the optional is to describe the figure five through seven. Why don't we just use paragraph two in that list of fraud prevention devices which just says schedule them randomly. If that is the case then this patentee would not have to use the word semi-random. The term here issue is semi-random. It's not random. The prefix semi does add something more to them randomly and here what the specification teaches us is the predetermined time interval to when he says semi-random and that support appears in fact on column four line 33 where it says the present invention is designed to make one and only call during the selected time period to enable processor to detect situations where more than one system is using the same copy of the software and that description appears consistently and repeatedly throughout. Do you have a final thought for us Ms. Lee? Yes your honor. We asked this court to reverse the summary judgment of non-infringement as it relates to the 269 patent affirm the summary judgment as it relates to the 269 patent and reverse the summary judgment as it relates to the 758 and 863 patent and ask this court to have the case remanded for further proceeding. Thank you. Thank you Ms. Lee. Mr. Doyle you have a couple minutes left. Yes your honor. Very briefly. I do think the column six is very important on the optional aspect of it and if you look back at the special master's reasoning he looked at the one call per period function and said well the purpose of that is fraud misuse detection and again that is disconnected from the purpose of the semi-random rate term. Semi-random rate term does not appear in the independent claims that are purely about misuse detection. What about but they do it does appear I'm sorry in the dependent in some of the deep in some of the dependent claims they do and sometimes they add language like in claim 21 where it says a semi-random at a semi-random rate and has a semi-random rate within a selected range of values which is how they describe the one call per period in the patent which wouldn't be necessary if that were inherent in the term semi-random right to add and we're doing the semi-random right by a range of values like described in the specification that's the preferred issue of taking the preferred embodiment to limit the invention say this present invention it uses that language but as the case say that doesn't automatically do it and when you haven't when it specifically says it's optional it should not be interpreted as a limitation on the invention Thank you. Thank you Mr. Doyle. Our next case